PITTMAN, Judge.
Elizabeth H. DeVan (the “sister”) filed a petition for protection from abuse, pursuant to the Protection from Abuse Act, § 30-5-1 et seq., Ala.Code 1975. She alleged that her brother, Douglas G. Horton, had verbally abused her and their mother, Janet Horton, and that her brother had threatened her with violence. The trial court granted an ex parte protection-from-abuse order as to both the sister and the mother. The trial court then held a hearing to determine whether to continue the protection-from-abuse order. After the hearing, the trial court dissolved the protection-from-abuse order as to the sister and continued the protection-from-abuse order as to the mother. The brother filed a postjudgment motion, which the trial court denied.
The brother appeals. He argues that the trial court erred by continuing the protection-from-abuse order as to the mother. The brother argues that the evidence does not support the continuation of the order.
The brother and the sister disagreed over the health-care arrangements for the *757 mother. The brother wanted the mother to remain at home and for him to be her primary caregiver. The sister wanted the mother to be placed in a nursing home. The record indicates that the sister obtained a guardianship over her mother in Mobile Probate Court and that the probate court also nullified the durable power of attorney the mother had given the brother. The sister then placed the mother in a nursing home, over the brother’s objection. The sister testified that the mother suffers from congestive heart failure, high blood pressure, and dementia.
The following events formed the basis of the sister’s protection-from-abuse petition. The sister and the brother were visiting the mother in the nursing home. The brother suggested that they take the mother out to lunch. The sister agreed, and the brother drove them to a restaurant in Mobile. After they ate, the brother suggested that they take the mother to see her house and allow the mother to attend her church. The sister disagreed and told him so outside of the mother’s presence. She testified as follows to the subsequent events:
“And I said, as her temporary guardian, I need to make that decision. And Douglas agreed with me. We went back to the table. And he began talking in an agitated way, basically, to mom and to me, telling mom that my sister and I had stolen her away from him; that we were forcing her to stay against her will in a place where she couldn’t see her home or her friends or her church. He just went on and on about this, about the coming up court case regarding the guardianship.
“I said, Doug, I don’t think this is a good thing to talk about in front of mom. And he just accused me of trying to keep the truth from her; that the only reason I didn’t want to talk about it in front of her was because I wanted to lie to her. She didn’t know what was happening. As I said, she has dementia.
“He then started saying that I was keeping her from church and her home. And I said — He said this is going to be^ — -I’m going — You’re going to hear about this in court, Beth [the sister]. And I said, Doug, you’re harassing me, because he was using a harassing tone. And he said call the police. And I said, Doug, you’re harassing me.
“[And he said, c]a!l the police.
“All this time, mother is very agitated. She is just confused.
‘We finally got away from the table, got into the car. Doug was driving. I was in the backseat, and mother was in the front seat. It’s about a 20-minute drive to back to Fairhope. The whole 20 minutes driving back, Doug was agitated, very, very angry, yelling at me in front of my mom — my mom was right beside him — about how I was a monster. I was an animal. I was mentally ill. Mom was being kept against her will. Mom, do you know that Barbara [the other sister] and Beth have stolen you away from me and are keeping you away from me against your will? Did you know this? Did you know that?
“And I said several times, Doug, please stop. This is not good for mom to be subjected to. She’s sitting right there. He was yelling. He was using profanity. He was — I could see her eyes. She had the mirror down in front of her. I could see her eyes. And they were just darting back and forth. She said a couple of times, okay, Doug, that’s enough. Okay, Doug, that’s enough. But, he never did stop.
“When we got to — He said I can’t wait for your funeral. He said — He said that twice. The second time he said if you keep eating junk food, that will take *758 care of that. So — But, he can’t wait for my funeral.
“When he pulled up to the back of the Beverly Health Care, mom said, where are we now? And Doug said you’re at the prison room, 207, where Beth and Barbara are keeping you with decrepit people. And she just kind of — She just didn’t want to hear that. And we got her into the nursing home.”
The sister also testified that the brother did not threaten the mother. She characterized his behavior and words while he drove her and the mother back from the restaurant to the nursing home as putting their mother in a “very bad” or “unsafe” condition, considering the mother’s health.
The sister argued during the trial that the brother’s behavior and words during the above incident amounted to “elder abuse” considering the mother’s dementia and poor health. In his testimony, the brother characterized his behavior during the incident as showing irritation with his sister.
At the close of the trial, the trial court directed the following statements to the brother:
“I think when you’ve got an older person, this lady’s age, who is confused, becomes confused whenever abstracts are given to her, I think it is abuse when you start talking in a voice that was as irritated as you had been with your sister in months. I don’t think that’s right. I think all that does is confuse the person and the issues.
“I’m going to dissolve the protection order as it pertains to [the sister], I am going to keep the protection order in place as it pertains to [the] mother....
“... I’m just going to tell you that this kind of behavior toward an elderly person, whether you intend it or whether you didn’t intend it, is not going to happen.
“... Let me state specifically, though, you’re not going to yell and scream at an old lady or around an old lady and just upset her. From what you’ve told me, you know, she’s easily upset. She’s easily confused. And that’s just not going to happen, not in Baldwin County [where the mother currently resides in the nursing home].”
The brother argues that his conduct, as related by the sister’s testimony, does not support the trial court’s imposition of a protection-from-abuse order as to the mother. Section 30-5-6 requires the sister to prove her allegations that the brother committed abuse against the mother by a preponderance of the evidence. We conclude that the sister has not met her burden of proof.
Section 30-5-2, Ala.Code 1975, defines “abuse” as:
“The occurrence of one or more of the following acts, attempts, or threats between family or household members, as defined by this chapter:
“a. Assault. Assault as defined under Sections 13A-6-20 to 13A-6-22, inclusive.
“d. Criminal coercion. Criminal coercion as defined under Section 13A-6-25.
“e. Harassment. Harassment defined under Section 13A-11-8.
“g. Menacing. Menacing as defined under Section 13A-6-23.
“h. Other conduct. Any other conduct directed toward a member of the protected class covered by this chapter that could be punished as a criminal act under the laws of this state.
*759 “i. Reckless endangerment. Reckless endangerment as defined under Section 13A-6-24.
“n. Unlawful imprisonment. Unlawful imprisonment as defined under Sections 13A-6-41 and 13A-6-42.”
The sister’s testimony indicates that the brother did not inflict any physical injury upon the mother. Therefore, the brother could not have been found to have assaulted the mother. See § 13A-6-20 through - 22 (providing that assault in the first and second degree each require an intent to cause, and result in “serious physical injury” and assault in the third degree requires an intent to cause, and results in “physical injury”).
The sister testified that the brother did not threaten the mother. Therefore, the brother could not have been found to have committed the crime of criminal coercion. See § 13A-6-25 (requiring a threat of physical harm, harm to property, or harm to reputation).
The sister’s testimony is that the brother used abusive language and made an abusive gesture toward her — not toward the mother. Therefore, the brother could not be found to have harassed the mother. See § 13A-11-8 (requiring physical contact or abusive language or a gesture toward another person).
We also conclude that the brother could not be found to have committed the crime of menacing. The sister’s testimony is undisputed that the brother took no “physical action” toward the mother. See § 13A-6-23 (requiring “physical action” to place another in fear of injury). See also Ex parte N.W., 748 So.2d 190, 193 (Ala. 1999) (“Language, whether abusive or obscene, is not ‘physical action.’ ”).
We lastly conclude that the brother could not be found to have committed the crime of reckless endangerment. See § 13A-6-24. The sister presented evidence indicating that the brother was driving while he was yelling and using profanity. The sister also testified that the brother would turn around to yell at her because she was in the backseat. We conclude that the sister’s evidence is not sufficient to support a finding that the brother committed the crime of reckless endangerment.
Because we conclude that the evidence presented by the sister does not support a finding of any of the acts of abuse set out in § 30-5-2, we reverse the trial court’s judgment imposing a protection-from-abuse order as to the mother.
REVERSED AND REMANDED.
CRAWLEY and MURDOCK, JJ., concur.
YATES, P.J., and THOMPSON, J., concur in the result.